at all. Argument not to exceed 15 minutes per side. Ms. Mazarin, you may proceed for the appellant. May it please the Court, Mary Mazarin on behalf of the Defendants Appellees, Officers Pauch, Stauriez, and Wilson, I'd like to reserve four minutes for rebuttal. The City Officers bring this Qualified Immunity Appeal because they're entitled to a reversal and judgment in their favor based on whether or not the defendant has been in the absence of clearly established law that would have told them that less than intentional conduct could be the basis for a fabrication of evidence claim or that a mistaken analysis and report without more could be the basis for a fabric Why do you say less than intentional conduct? Pardon me? Why do you say less than intentional conduct? Because the District Court articulated in its ruling a standard that was intentional or reckless and the proofs that the District Court relied upon all were given, the testimony was all either it was intentional or it was a horrible mistake and that's throughout, every single expert offered that kind of dichotomy and in that circumstance Did they use the word fabrication at some point? Did the District Court? Doesn't the record evidence use words like fabrication? That's not reckless. I think the record evidence of the experts when asked about what happened I don't think they said fabricated I think when they analyzed the report and forgive me if I'm misremembering but my understanding of the record is they repeatedly said either it was intentional conduct or it was horrible and they concluded based on the fact that two experts mistakenly concluded that the bullets could have been used in the Rossi gun they concluded that therefore it was either a horrible mistake or or intentional intentional intentional, you lose horrible mistake, maybe you win correct and there's evidence to support a theory that it was intentional I don't think there is and I think there's a whole line of cases that talks about why that is the case what the cases have said is that when you're looking at a mistaken report or a mistaken analysis even if it's horribly mistaken that alone is not enough and certainly in terms of the law from this circuit and I think throughout the country to conclude that somebody has engaged in intentional conduct and that's probably so why couldn't a jury look at this evidence and decide it was intentional because there's nothing other than an unreasonable speculative basis you're the one that just kept saying there's lots of evidence about intentional and reckless intentional and reckless intentional and reckless let's assume you're right that reckless doesn't count the inferences go the way of the plaintiffs why can't a jury say we're voting intentional if you look at the clearly established law about fabrication and you look at a whole series of cases those cases where this court concluded it was enough to avoid immunity or to get to a jury on a fabrication claim included more than just the mistaken outcome so if you look at Gregory for example the investigator counted 7 hairs her notes had the number 7 scratched out she indicated other results were inconclusive so there was affirmative evidence beyond just the mistake to show that she engaged in intentional fabrication is there a theory here that the test bullets were given to the expert examiner the first time around isn't that the theory there is a theory that stated me as switch the bullets and again that's entirely speculative based on I don't know what you mean by it's not proven yet but it doesn't seem like wildly speculative I mean if this seems like I'm not an expert on ballistics but it seems like this is something an expert on rifling nor that but it seems like this is something that someone could detect who specified in this area and that it would be unusual to make such a wild mistake and that could be reckless or intentional I mean there's at least a plausible theory that some evidence support even your expert was pretty wobbly on the point right well what you have is trial testimony from 20 years ago or whatever the exact numbers are that the experts in this case have all agreed was wrong and I'm not disputing that it was wrong but under the clearly established law of this circuit you have to show intentional and under the clearly established law of this circuit just because you have a really big mistake isn't enough and in Camineta in Gregory in all of those cases you had some evidentiary basis beyond the big mistake if you want to call it that which would allow a reasonable inference a reasonable jury to take the next step and that's absent here this is what I'm having a hard time processing so maybe I'm just missing it I mean this is a hypothetical but it's close to the fact so you have bullet from victim and the bullet from victim supposedly has five rifling marks and then you have this other bullet the six rifling marks and that's the one that comes from the defendant's gun alright and then the experts say I wasn't there like I don't know what in the world this person was doing but I see two possibilities they're idiots or they intentionally changed the evidence they can't say anything more they would be lying if they said anything more and it's still very relevant evidence and the jury would then make a decision based on what they'd heard and everything else and they could decide it was intentional  if it were to be that that would be the case so I'm right how I'm thinking about it I'm just wrong about the facts here well wrong about what the law has said about what it takes to show intentionality I'm trying to frame it in legal terms what did I get wrong with my hypothetical my hypothetical seems to me would get to a jury and they would have authority to say on this evidence we think there's you know preponderance that it was intentional they intentionally switched out the evidence why couldn't they do that with what I just described and I admire the expert that didn't say it was intentional how does the expert know it was intentional they don't so I would say two things first it is the law and I would cite Bishop v. Hackle and I would cite the Turner case that if you have nothing more than an unreasonable inference that is an inference that's not logically deducible in one direction from the facts that is sufficient to reverse the denial of summary disposition of summary judgment so your point is unreasonable to infer that this was intentional correct and then we disagree with that well I would add to that I'm hoping you won't disagree but I understand the questions I would add to that this court's case law has said and not only this court but the circuits from around the country have said that just having a really mistaken analysis in and of itself is not enough you have to show that the person knew that they were mistaken and they nevertheless presented this fabricated suppression or creation of evidence and that's absent here I guess you could get that if the officer admitted yep you're right I fabricated it but sure and sure the officer admitting that what more evidence are you going to have here other than the bullets you have the actual bullets you have the testing I'm just not sure how more you would have how about this is a variational hypo the victim dies from a rifle and the only bullets they have are shotgun shells is that enough to show intent well I again the expert doesn't know what happened he doesn't know how they the rifle bullet disappeared and they have shotgun shells he doesn't know what happened so he says this person's blind or this person intentionally fabricated or this person's something strange going on and that goes to a jury doesn't it your hypothetical is there's one kind of bullet shotgun shell the victim dies from a rifle bullet one okay one rifle the only evidence they have 20 years later are shotgun shells and the claim is against the person who gave testimony that it was the one and not the other wrongly there may be I mean that's an extreme hypothetical I don't think it's that would be a closer call it may be that the court would go the other way but that's not what this evidence shows I mean in fact Townsend gave testimony at the trial he was the key witness who gave this testimony at the trial he looked at the bullets he talked about all these things and then 20 years later when they no longer have the gun and they have different evidence they all reach a conclusion wow this was really a bad mistake good that they faded this out because Mr. Ricks is no longer in prison but that isn't the same thing as concluding that there is a jury submissible case and that these officers are not entitled to the protection of qualified immunity you were asked I see my time is up I'm really hoping I could just make quick points very quick one is there are cases where there is evidence Gregory is an example of that I think Ferris is an example of that where there is more than just the mistake where somebody scratched something out and deliberately omitted but there is evidence they knew it existed in the documentation and that would certainly is that your first and second? the second is Stalliez was not even there in the testing the district court nevertheless refused to dismiss that theory against him so he could be held liable both in the testing and the so called switching bullets you think he should get relief on the testing because he wasn't there but if you are otherwise wrong he is still in the case when it comes to the switching? he should get relief I know you want him I understand in the context of your point that he wasn't at the test which would have nothing to do with the switching correct good correct and I would say with respect to the switching I don't know any more you are going to get rebuttal rebuttal is good okay on the point 4, 5 or 6 all right here we go good morning your honors may it please the court my name is Seema Patel on behalf of plaintiffs at council table with me I have our partner James Harrington and our appellate associate Kirsten Nunn with me today your honors this case is Mr. Ricks was wrongfully imprisoned for almost 25 years based on fabricated evidence and that evidence was fabricated by the defendants in this case now why do you want to delay in the court of appeals saying you are right your Johnson vs. Jones argument delays are having views on any of this stuff so you want us to dismiss the appeal for lack of jurisdiction as opposed to getting an appellate ruling that there is a tribal issue of fact which by the way means if you win the jury trial there would be no grounds for reversal because we would have already said there is a tribal issue of fact why push Johnson vs. Jones I have never understood this I was trying to parse out defendants argument so the way they presented the briefing it seems like they are accepting all of our facts in a plaintiff favorable way that they are supposed to because we are at the non-moving party we are supposed to have all information all you have to do is remind us of the rule 56 standard and if we understand the rule 56 standard which I certainly hope we do after all these cases we are under rule 56 that means if you get a ruling in your favor that there is a tribal issue of fact and you win in front of the jury you have a precedent lock, stock, barrel there is really no appeal I will concede the dismissal on the jurisdictional basis I just wanted to cover that ground because it seemed like in an oblique way that defendants were trying to argue the facts and re-argue the facts but I agree that we are under rule 56 standard all reasonable inferences must be made in favor of us as the non-moving party I think they are conflating a reasonable inference in this case with speculation anything that can be considered a reasonable inference defendants are trying to label as a speculation the facts in this case are horrific and I think that the timeline is significant Mr. Ricks was arrested before the gun was recovered and before the ballistics examination was conducted by Wilson and Polk after the gun was recovered at his house the lead investigator asked for the in the normal course of things for the investigation to occur and that's when Polk did his initial investigation of the ballistics now that investigative report I think is very significant it's a single one page report it's conclusory it identifies the two evidence bullets it states that there are traces of lands and grooves and then it concludes that there is a positive 100% positive ID match with the gun that was found at Mr. Ricks' house the Rossi 38 now that report is significant also in light of Polk's trial testimony at the Rick's trial because at the trial testimony I think we quoted this in part in our briefing but Polk went through and explained to the jury the significance of lands and grooves he explained the significance of the science behind ballistics matching and why certain guns and certain bullets can be matched and he explained why these bullets 100% like a fingerprint came out of this gun and in doing so he explained the importance of lands and grooves and why because certain guns have bifurcating characteristics inside of them those grooves and lands also form corresponding grooves I want to hear your response to the other side's argument which I take to be this so maybe I'm doing a hypothetical to make it more stark but I think what she's saying is you know plaintiffs lose in a case where hypothetically all you have is this evidence there's a disparity okay there's something that seemed to go wrong here and the only evidence we'll just say there's one expert to make it simple and the expert says I have no idea what happened this was either a mistake like it was just a mistake an innocent mistake or someone was playing games switching things out fabricating so I think what she's saying is she's saying listen unless someone says this is evidence of fabrication this is evidence of intentionality you can't get to a jury the or is what creates the problem so I think that's her main pitch I think that is her main pitch and I think she's absolutely wrong because that takes what should be a reasonable inference into the only way that you can ever get any justice in court is if you have an affirmative confession by the defendant but I do want to also add that we have more than that in this case because qualified immunity is designed to help the other side so I'm not sure I mean right it's supposed to be pretty egregious stuff when officers are found monetarily liable right it is but what happened in this case is also egregious and actually whatever is beyond egregious but my example is negligence or intentionality that's a big difference because you would agree negligence means it's not a problem I don't think it's negligence I think it's gross gross incompetence and negligence and I think that what's a case that shows she's wrong I share your instinct that she's wrong about that that it's an honest expert that says I don't know because I wasn't there all I can tell you is how unusual this is but what's a case that says when the honest expert says it's one or the other and one of the options is not enough hypothetically what's the case that says well you let the jury decide well I think the Gregory case went to that right because they talked about I mean the examiner in that case Katz kept saying well I just made a mistake I didn't see these or I kept these off and yes there was other evidence that said that maybe she could or didn't but you're never going to have a defendant who's going to come and say yes I made a mistake or I intentionally left something out they're always going to say I made a mistake they're never going to admit that they falsified evidence in order to secure a false conviction and so Gregory I think that the Bernard V. Mills case goes into it a little bit I know we did it in Maldowan a little bit it's all talking about how you build up the evidentiary basis like so from this evidence what is a reasonable inference from there and your honor I think that's what it comes down to and here we don't just have negligence I don't think a single one of the experts not the examiners themselves not the defense expert not any of our experts nobody said that this was in the realm of just negligence this was either gross, gross, gross incompetence or intentional it couldn't be both and the second piece of evidence that I want to tie into which is I think significant in considering all of this is that Polk's trial testimony that I was talking about a minute ago he in his trial testimony he stated that he understood the significance of lands and groups he understood that a gun that is a 6R designation that has 6 lands and groups will only be able to fire a bullet that also has corresponding 6 lands and groups he understood this in his report he stated that the two bullets had traced lands and groups that's how he designated that in the report he in his trial testimony he also stated that you need to be able to match up it's basically fitting a puzzle piece together that the two have to match in order to make a positive identification but then years later in 2017 when we're taking his deposition he's changed his story in his deposition he's saying well I couldn't make out any lands and groups I just saw traces I couldn't I couldn't make a positive ID as to whether something was a left 5R gun or I mean 5R bullet or 6R right he's very unequivocal about all that but then he ends that with but regardless of the fact that I can't make out that this is a 6R bullet or a 5R bullet I'm still going to be I can still say that this was a positive identification now after he's gone through this step of explaining I understand that this is the methodology is unassailable no not no one of the experts or even the two examiners involved the defendant examiners nobody disagrees that this is the methodology involved with making a positive identification of the bullets so he agrees with that then he agrees and admits in the deposition that where all he was able to see were traces of lands and groups and that based on his examination he's saying he couldn't make out whether it was a 5R or a 6R well that's a basic rifling characteristic that's before you can make a positive identification you have to go through detailed steps to make sure that there are overall class identify markers that are met sub-identifiers that are met and then go to the very specifics that are to that specific gun he couldn't even do that he said he could not tell whether this was a 6R or a 5R bullet but then he also stated that he could make a positive ID that's intentional conduct right there he's admitting that he knows the methodology that this statement saying that a 5R and a 6R can come from the same gun is wrong but then he's still espousing the conclusion that that was a positive ID and that's intentional I don't think that there is I personally don't believe that there's any other inference from that Can I ask you about the point your friend on the other side made near the end of her argument about I don't know how to pronounce the name but that officer was denied qualified immunity with respect to the testing although that officer wasn't there I think at least there is their theory for the testing and so the district court was at least wrong on that part of the case I think the district court had a blip misstatement in the recitation of the record in the 78 page opinion that it issued it comes from our allegations in the complaint and so I think way back before discovery when the complaint was being written we alleged that our fabrication claim against Dallas isn't dependent on that I think what defendants are actually asking is for that allegation to be stricken from the complaint and so doesn't form the basis of the fabrication claim if you look at the investigation and one based on switching the bullets on route there's just the one fabrication claim against him and we have facts that support that I don't mind that being clarified because I think that was played out in our statement I think that one other point that I did want to talk about and I did talk about it a little bit in detail about Polk's report and the detail or lack thereof in the report and his trial testimony but defendants rely a lot on Kaminada which also involves report albeit in arson I think that analysis and juxtaposition between the two is detailed it had explained methodology it had numerous pictures attached to it I think Chief Judge Sutton you presided over that case so you know a little bit more about it but that is not the scenario that we have in this case at all also in Kaminada the experts involved there was a difference of opinion in methodology and the plaintiff's expert were impugning the methodology used by the defendant but they didn't come right out and say this is right and this is wrong here even defendants are not disputing the methodology involved with making a positive identification everybody agrees that this is the way it's done and if you don't meet that first class characteristic match that's a process of elimination you can't  positive identification so pretend we're the jury what are you going to say in your closing argument if this goes back to a jury to get to the intentionality are you going to say these are just really bad people from the beginning and just playing games or just gross recklessness and zealousness about wanting to prosecute juries want to know why things happened what are you going to say I am an appellate practitioner so it's not a good thing to      appellate  so it's not a good thing to say that I am an appellate